146 So.2d 403 (1962)
MILEAGE REALTY CO., INC., a New York Corporation Authorized to Do Business in the State of Florida, Appellant,
v.
MIAMI PARKING GARAGE, INC., a Florida Corporation, Appellee.
No. 62-38.
District Court of Appeal of Florida. Third District.
November 13, 1962.
Rehearing Denied December 3, 1962.
Meyer, Weiss, Rosen & Rose, Miami Beach, and Sam Daniels, Miami, for appellant.
Sibley, Grusmark, Giblin, King & Levenson, Miami Beach, for appellee.
Before HORTON, CARROLL and HENDRY, JJ.
HORTON, Judge.
This was an action for declaratory decree and specific performance of a net profits rental lease. The appellant, plaintiff below, seeks review of an adverse final decree which (1) found that the lease was clear and unambiguous and did not permit the deduction of ground rent and taxes from gross profits in arriving at net profit; (2) found that the appellant was in default and not entitled to the return of its $100,000 security deposit; and (3) awarded the appellee a money judgment of $57,153.34 as the net profit rental due under the terms of the lease. We reverse.
The appellant leased the property in question for a term of ten years, assuming the terms of a prior ground lease including the obligation to pay yearly some $25,000 in rent and $15,000 in taxes.[1] A security deposit *404 of $100,000 was placed with the appellee to secure the payment of rent and guarantee the appellant's performance of the other covenants and conditions contained *405 in the lease. By the terms of the lease the appellant was to pay, as a "further rental," 50% of the "net profits" received and derived from the operation of any and all business conducted on the premises, to be computed according to a formula contained in a paragraph entitled "net profits." The appellant was required to render semi-annual reports or accountings of net profits and grant the appellee access to its books and records to verify the correctness of these reports. The lease further provided that if the appellant was not in default of any of the terms and conditions on January 1, 1961, the appellee was to return the $100,000 security deposit.
Accounting reports for four years of operation from 1957 to 1961 were duly submitted by the appellant under the terms of the lease. All of these reports disclosed a net loss and no payment of "further rental" was made. The total loss over the four-year period was approximately $65,000. In each of these reports the appellant deducted property taxes and yearly ground rent in computing net profit. Appellee accepted these reports without voicing any objections to their validity or correctness.
On January 1, 1961, the appellant requested return of its $100,000 security deposit and when it was not forthcoming, instituted this action. The appellee answered and counterclaimed alleging (1) that the appellant was in default under the terms of the lease by failing to account for profits; (2) that appellant had negligently and improvidently conducted the business on the leased premises resulting in a loss whereas otherwise it would have shown a profit. The chancellor appointed an accountant and directed him to conduct an independent audit of the appellant's books in accordance with the formula contained in paragraph two of the lease, and render a report reflecting either the net profit or loss for the years 1957, 1958, 1959 and 1960. The audit disclosed a net profit of $114,000 and based thereon the chancellor entered the decree appealed.
*406 The appellant contends that the language of the lease and the applicable principles of law relative to the construction of written instruments point up the chancellor's error in construing the lease as disallowing the deduction of ground rent and taxes in computing net profit, and that the terms of the lease are not so clear and unambiguous as to preclude the use of extrinsic aids in construing them to reach a fair and just settlement between the parties. The appellee contends that the terms of the lease are clear and unambiguous and were properly enforced by the chancellor in accordance with their plain meaning, and that any attempt to construe them differently must necessarily result in an improper modification and rewriting of the agreement between the parties.
In Orlando Orange Groves Co. v. Hale, 119 Fla. 159, 161 So. 284, 295, the Supreme Court of Florida said:
"This court is committed to the doctrine that where the terms of a written contract are in any respect uncertain or doubtful and the parties thereto have by their conduct placed a construction upon the contract which is reasonable, such construction will be adopted by the court upon the principle that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the principles of correct legal interpretation of the terms of the contract."
See also Reinhardt v. Reinhardt, Fla.App. 1961, 131 So.2d 509, 513; Sawyer v. Hime, Fla.App. 1959, 109 So.2d 193, 194; Lalow v. Codomo, Fla. 1958, 101 So.2d 390, 393; Bennett v. Williams, 149 Fla. 4, 5 So.2d 51. We hold that the chancellor erred in failing to apply this rule of practical construction to the case at bar. While it is true that the formula contained in paragraph two of the lease does not specifically refer to the deduction of ground rent and taxes in computing net profits, the tenor of the lease agreement, when read as a whole, does not exclude such deductions although it does exclude certain specified items. This coupled with the fact that the appellee failed to object to the annual accounting reports which on their face clearly showed the questioned deductions, leads us to conclude that the parties by their conduct placed a construction upon the lease which was not shown to be unreasonable or wholly at variance with the principles of correct legal interpretation of the terms of the lease.[2] Any other construction, we feel, might, under the circumstances of this case, ultimately result in an unwarranted and unjust loss of the security deposit.
Accordingly, the decree appealed is reversed and the cause is remanded with directions to enter a decree for the appellant not inconsistent with the views expressed herein.
Reversed and remanded with directions.
NOTES
[1] The pertinent portions of this lease are as follows:

"[Rental] 1. The Lessee herein hereby assumes and agrees to pay to A.J. Henderson, his heirs, legal representatives or assigns, Lessor under said lease of the 3rd day of July, 1948, the sums specified in said lease and said amendment thereto to be paid on January 1, 1957 and on each succeeding July 1st and January 1st thereafter, to and including July 1, 1966, and to pay all taxes as provided in paragraph 3 of said lease under `COVENANTS OF LESSEE', and to carry all insurance as provided by said lease, all of which amounts are hereby agreed to be a part of the rental of said premises, and (for the ten (10) year term of this Lease), to perform all terms and conditions of said lease stipulated therein to be performed by Lessee herein.
"The Lessee will pay to Lessor as further rental, fifty per cent (50%) of the net profits received and derived from the operation of any and all business conducted on said premises by Lessee, its successors or assigns, said net profits to be computed and determined and payable to Lessor as hereinafter provided.
"[Net Profits] 2. Net profits from operation of the business and on the demised premises aforesaid shall be all rentals, fees and income derived from the parking and storage of automobiles and other vehicles, from the sale of gasoline, oil, lubricants, tires, tubes, batteries and accessories and all other merchandise, if any, sold or dealt in, charges for all services rendered to or for motor vehicles and automobiles, LESS the net amount of all invoices paid for gasoline, oil, lubricants and goods, wares and merchandise sold and dispensed on the demised premises, all salaries and wages paid directly to employees and personnel operating the said parking lot and business, all charges for electricity and other utilities, all printing costs and expenses for tickets, tags and other printed material used in the operation and maintenance of the business, all sales taxes, payroll and other taxes (other than income taxes) and all license fees and charges paid by Lessee arising out of or resulting from the operation of said business, all insurance premiums directly attributable to the operation of said parking lot and business, including premiums for liability insurance as hereinafter provided, all bona fide claims for damage paid or exacted on account of breakage, theft, pilferage and the like, all bookkeeping, accounting and other overhead directly attributable to the operation of the said parking lot and business, and repairs incidental to the operation of the parking lot and business conducted on said premises. The Lessee will not charge nor make claim for any expense for executive salaries or administrative supervision, and the same shall not be treated as an operating expense in the computation and determination of net profits.
"In the event Lessee shall operate an additional business other than that being presently conducted on said premises or shall operate any other business than that being presently conducted on said premises, then the net profits from the operation of such additional business or new business shall be all income from additional business or new business less the customary and necessary operating costs thereof.
"The Lessor's fifty per cent (50%) of net profits computed as aforesaid shall be determined and paid as a rental to Lessor prior to any income taxes or levy and treated as rental for Lessee's use and occupancy of the demised premises.
"An accounting of net profits, computed and determined as hereinabove provided and due as rental to Lessor shall be rendered semi-annually within sixty (60) days after the close of the preceding semi-annual period, prepared by a Certified Public Accountant, and payment of rental to lessor or its authorized representatives shall be due and payable ten (10) days after the rendition of the annual Certified Public Accountant's accounting. Lessor or its authorized representatives shall, on request, have access to all of the books, records and accounts of the Lessee relating to the operation of Lessee's business on the foregoing premises at any reasonable time and place.
* * * * *
"[Security Fund] 5. Simultaneously with the execution of this lease, the Lessee shall pay to the Lessor the sum of Twenty-Five Thousand Dollars ($25,000.00), and on or before December 31, 1956, the Lessee shall pay to the Lessor an additional sum of Seventy-Five Thousand Dollars ($75,000.00). The total sum of One Hundred Thousand Dollars ($100,000.00) shall be and constitute security and guaranty for the payment of rental and rental considerations provided for in this Lease, and also for the faithful performance by the Lessee of all of the terms, conditions and covenants and agreements, contained in this Lease on the part of the Lessee to be kept and performed.
"With reference to said security fund of One Hundred Thousand Dollars ($100,000.00), the parties hereto expressly covenant and agree as follows:
"(a) If the Lease is cancelled for default of the Lessee, then no part of the Security Fund shall be returned by the Lessor unto the Lessee, nor shall the Lessor be bound to account unto the Lessee for any part of the Security Fund.
"(b) If the Lease is cancelled for default of the Lessee, and such cancellation is accompanied either by a surrender of possession or a removal, voluntarily or otherwise, by the Lessee, from the premises, no part of the fund shall be returned unto the Lessee, nor shall the Lessor be bound to account to the Lessee for any part of the said Fund, the Lessor retaining the Security Fund as liquidated and agreed upon damages for all damages which the Lessor may have sustained by reason of the default of the Lessee. Lessee's maximum liability hereunder shall be the amount of the security deposit.
"(c) No interest shall be paid on any part of the Security Fund.
"(d) The Lessor need not keep the said Fund separate or in a segregated account.
"(e) Neither the Security Fund, nor any part thereof, shall ever be applied as rent.
"(f) On January 1, 1961, if the Lessee is not in default in any of the terms or conditions of this Lease, said Security Fund of One Hundred Thousand Dollars ($100,000.00) shall be returned to the Lessee herein, provided, however, that simultaneously therewith and annually thereafter during the remainder of the term hereof, Lessee shall deposit with the Lessor an amount equal to the sum of the Municipal, State and County taxes assessed against the property described herein for the preceding year, plus the total annual insurance premiums for insurance required to be carried on said premises, plus the sum of Twenty-Five Thousand Dollars ($25,000.00) for ground rent. As each of the foregoing fixed charges accrue same shall be paid by the Lessor out of the foregoing funds and receipts furnished to the Lessee forthwith.
"(g) Upon the termination of this Lease by the Lessor as provided herein, or upon the expiration of the term of this Lease, whichever may occur first, and if at that time the Lessee is not in default of any of the terms, conditions, covenants or agreements contained in this Lease, the Lessor will return to the Lessee the sum of money, if any, held by the Lessor pursuant to this paragraph." [Emphasis supplied]
[2] Assuming, arguendo, that the construction placed upon the lease by the chancellor was correct, the final decree appealed is inequitable in effect since it allows the appellee to retain the $100,000 security deposit and in addition have a judgment for $57,153.34. The lease provides (note 1, supra) that in the event it is cancelled for default by the lessor, the lessor shall retain the security deposit as liquidated damages and that the lessee's maximum liability should be the amount of the security deposit. While we recognize that the final decree adjudicated a default and not a cancellation, nevertheless, a default is a condition precedent to cancellation under the terms of the lease.