JUSTICE, JOHN D., Associate Judge.
The Appellant, Midstate Hauling Company, Inc., referred to hereinafter as Mid-state, a corporation engaged in the transportation of “commodities commonly referred to as road building aggregates,” entered into separate lease agreements with the defendants, Appellees herein, A. P. Watson, Junior C. Cook and Ray Downing, whereby the latter would lease “motor vehicle equipment” used to haul the aggregates for Midstate. In return Midstate agreed to compensate the defendants for the use of their equipment on the following basis:
“75% of the net revenue unless otherwise endorsed in writing for a particular job and further to make settlement with the Defendant(s) at periodic intervals, at least every 21 days.”
This action arose originally in the lower court in a Chancery action in which Mid-state sought an injunction against each of the defendants to enforce a provision in the contract which provided that:
“Contractor (defendant) agrees that upon termination of this contract for any reason whatsoever, he will not directly or indirectly transport, either for himself or others, road building aggregates in any of the territory served by MIDSTATE for a period of six (6) months from the termination of this equipment lease.”
The defendants filed separate answers alleging that the plaintiff initially breached the contract and filed counterclaims against Midstate.
The defendants alleged that the plaintifE breached the lease agreement by failing and refusing “to pay defendant(s) 75% of the net revenue as agreed but actually paid much less than this percentage” and that the plaintiff was holding back deposits and wages or payments due them. The Chancellor consolidated the cases for trial.
In regard to the counterclaims, the controversy between the parties revolves around the method used to derive the “net revenue” received from customers. The plaintiff originally calculated the amounts due the defendants Cook and Downing by taking 75% of the “gross revenue” received from a customer and making payment on that basis. Subsequently the plaintiff made adjustment to this “gross revenue” to cover operating expenses and to arrive at the “net revenue.” In the Order entered at the conclusion of the hearing, the Chancellor, in his findings, stated :
“The Court finds that the parties having reached an agreement as to the method of computing net profits on a particular route cannot change that *264 basis without joint assent from both parties. The Court feels that Mid-state Hauling Co., Inc.’s explanation would have been reasonable had the five cents differential existed throughout the contract but that it cannot be changed as it was done in this case.”
The Chancellor thereupon ordered Mid-state to pay the defendants Cook and Downing “75% on all loads to Abco for the five cents differential price.” The Court found that as to the Defendant Watson the compensation due had been properly computed. The Chancellor also granted the in-junctive relief requested by the plaintiff against each defendant. The three defendants did not challenge the entry of the Decree granting the injunctive relief and have not cross-assigned this as error on appeal.
In addition to the amounts claimed above, the defendants each counterclaimed for monies earned by them under the contract which were being withheld by the plaintiff. The contracts all provided that the contracts could be terminated by either party upon giving thirty (30) days notice. The plaintiff asserted he was holding monies claimed by the counterclaimants as liquidated damages under the provision of the lease agreement which states that:
“In the event contractor (defendants) fails to give notice as aforesaid (30 days) Midstate shall retain all sums of money belonging to contractor, as part of the damages sustained by Midstate, * * * ”
The defendant Watson had terminated his contract on September 27, 1963, the defendant Cook on October 4, 1963 and the defendant Downing on October 8, 1963, shortly after having received from Mid-state a notice dated September 20, 1963 announcing that payments due under the contracts would thereafter not be paid as required by the contracts but would thereafter be paid every four weeks instead of every twenty-one (21) days as required by the contract and the period of pay held back would be extended from two weeks to three weeks.
The Chancellor held that Midstate could not claim the money as a forfeiture because the contract failed to set up a “scale or guide or joint understanding of liquidated damages”; that the provision was “too broad and too harsh”; and that the defense of forfeiture was not pleaded as an affirmative defense. The Chancellor therefore ordered Midstate to pay to the defendants the monies belonging to them.
In regards to the defendant-counterclaim-ant Cook, the plaintiff withheld an additional sum of $150 which was a security deposit. He withheld this amount as “allowed” by the contract provision which states:
“The above sum of One Hundred Fifty Dollars ($150.00) will further secure CONTRACTOR (Cook) remaining under the lease for a period of not less than six (6) months from date of execution of this lease, and should said CONTRACTOR terminate prior to the six (6) month period, the sum of One Hundred Fifty Dollars ($150.00) will thereby be considered forfeited.”
The plaintiff was ordered to return this sum also to the defendant Cook.
This appeal followed the entry of the three judgments.
The appellant, Midstate, raises the following points on its appeal:
I. DID THE TRIAL COURT ERR IN HOLDING WHERE MIDSTATE BEGAN PAYING APPELLEES COOK AND DOWNING 75% OF THE GROSS PROFIT RECEIVED ON A PARTICULAR HAUL TPIAT MIDSTATE COULD NOT THEREAFTER DETERMINE THE NET PROFIT AND PAY APPEL-LEES ON THE BASIS OF 75% OF SAID NET PROFIT?
II. WPIERE THE LOWER COURT HAS FOUND THAT THE DEFEND *265 ANTS BREACHED THEIR CONTRACTS AND ENJOINED THE DEFENDANTS FROM CONTINUING TO BREACH THEIR CONTRACTS AND WHERE ON THE TRIAL OF DEFENDANTS COUNTERCLAIM THE DEFENSE OF FORFEITURE WAS TRIED BY IMPLIED CONSENT OF THE PARTIES, DID THE LOWER COURT ERR IN REVIEW OF THE RULE 1.15(b) OF THE F.R.C.P. ?
III. DID THE LOWER COURT ERR IN REFUSING TO ENFORCE FORFEITURE PROVISIONS OF THE CONTRACT FOR THE REASON THAT THE COURT FELT THAT THE PROVISIONS WERE “TOO BROAD AND TOO HARSH” AND BECAUSE THE COURT FELT THE CONTRACT DID NOT SET UP ANY SCALE OR GUIDE OR JOINT UNDERSTANDING OF LIQUIDATED DAMAGES?
The contract between Appellant and each defendant was silent as to the definition of the term “net profit.” In contracts of the nature entered into by and between these parties, where no effort is made to spell out and define the term “net profit” parties to the contract will seldom be in agreement as to what deductions are to be made from “gross profit” in order to arrive at “net profit.” In connection with its contract with the defendants Cook and Downing, it was the plaintiff who first determined that payment of 75% of “net profit” should be on the basis of 75% of “the gross revenue received from customers.” Payment was made by plaintiff on this basis. Thus it was the plaintiff’s practical interpretation and application that “gross profit” and “net profit” as applied to these two contracts were synonymous. The Chancellor was correct in holding that the plaintiff could not thereafter unilaterally change the method of computing the compensation. Mileage Realty Co. v. Miami Parking Garage, Inc., Fla.App. 1962, 146 So.2d 403; Orlando Orange Groves Co. v. Hale, 1935, 119 Fla. 159, 161 So. 284; 3 Corbin, Contracts § 558 (1951). This had to be done by way of mutual agreement and understanding.
The contract with the defendant Watson called for payments on the same basis as that of the other two defendants but apparently Appellant had computed defendant Watson’s compensation on the basis of gross profits less certain charges, thereby arriving at a figure it called “net profits.” The Chancellor declined to declare a forfeiture of the sum found to be due the defendants at the termination of the contract on the basis hereinbefore set forth. Appellant has assigned this as error.
 As to Appellant’s second and third points on appeal, it has not been shown that the Chancellor was in error in holding that Midstate could not claim as a forfeiture the sums due the defendants. The Chancellor by his Order found that Mid-state had wrongfully changed the method of computing the compensation due defendants Cook and Downing under the contracts. Clearly this was a contributing cause as to the termination of the contract between the parties. To hold that Midstate having precipitated the difficulties between the parties could seize upon this and use it as a basis for refusing to pay defendants the sums due them under the contract would have permitted an inequity not contemplated by the parties. The plaintiff cannot recover liquidated damages for a breach for which he is himself responsible or to which he has contributed. United States v. United Engineering & Contracting Co., 1914, 234 U.S. 236, 34 S.Ct. 843, 58 L.Ed. 1294; 15 Am.Jur., Damages § 262.
 As to a forfeiture of the sums due the defendant Watson the Decree of the Chancellor will not be upset except on a clear showing of error, and this has not been demonstrated. Green v. Loudermilk, Fla.App.1962, 146 So.2d 601. The record shows that Midstate by its notice of September 20, 1963 announced it would not *266 thereafter abide by the terms of the contract in two particulars. Before one can declare a forfeiture of sums due under a contract, he himself must first have complied with all terms under the contract. This Midstate has not done.
In view of the foregoing, a ruling by this court that the Chancellor was in error in holding that the plaintiff could not raise the defense of forfeiture as it was not affirmatively plead would have no bearing on the ultimate outcome as to this point on appeal. No reversible error being demonstrated, the Decree is
Affirmed.
SMITH, C. J., and ANDREWS, J., concur.