TILLMAN PEARSON, Judge.
The appellant Southeastern Home Mortgage Company, formerly known as Home Mortgage Company of Florida, was a defendant in the trial court. It appeals a final judgment entered at the conclusion of a non-jury trial in a law action brought by the appellee Frank R. MacNeill & Son, Inc. We affirm.
The trial judge has given us the benefit of full findings of fact. Some of these are not challenged on this appeal and since they adequately set forth the factual situation, we incorporate them as a part of this opinion :
“1. That on or about September 30, 1960, SOUTHEASTERN HOME MORTGAGE COMPANY, formerly known as HOME MORTGAGE COM *473 PANY OF FLORIDA, sold the HOME INSURANCE AGENCY OF FLORIDA, INC., to HOFFMAN & KAABER, INC. A copy of the stock purchase agreement reflecting the sale is a part of the record in this cause.
“2. That prior to the sale of HOME INSURANCE AGENCY OF FLORIDA INC., by SOUTHEASTERN HOME MORTGAGE COMPANY, the Plaintiff entered into numerous agency contracts with HOME INSURANCE AGENCY OF FLORIDA, INC., wherein said agency obtained the underwriting facilities of certain insurance companies from the Plaintiff. Copies of said agency agreements are part of the record in this cause.
“3. That immediately after the aforesaid sale of HOME INSURANCE AGENCY OF FLORIDA, INC., HOME INSURANCE AGENCY OF FLORIDA, INC., did agree and did undertake and did service all business and accounts formerly written by HOME INSURANCE AGENCY OF FLORIDA, INC., prior to the aforesaid sale, pursuant to the aforesaid agency agreements. The agency agreements aforesaid speak for themselves.
******
“5. HOME MORTGAGE COMPANY OF FLORIDA and SOUTHEASTERN HOME MORTGAGE COMPANY are one and the same corporation. That hereinafter HOME MORTGAGE COMPANY OF FLORIDA will be referred to as SOUTHEASTERN HOME MORTGAGE COMPANY.
“6. That all of the business on which the return commissions are owed the Plaintiff was written prior to the sale of HOME INSURANCE AGENCY OF FLORIDA, INC., by SOUTHEASTERN HOME MORTGAGE COMPANY. That SOUTHEASTERN HOME MORTGAGE COMPANY owned all of the stock in HOME INSURANCE AGENCY OF FLORIDA, INC., prior to its sale and that some of the officers in the two corporations were one and the same. That SOUTHEASTERN HOME MORTGAGE COMPANY used HOME INSURANCE AGENCY OF FLORIDA, INC., as a facility in connection with their mortgage business. That in the sale of the insurance on which the return commissions are owed the Plaintiff, HOME INSURANCE AGENCY OF FLORIDA, INC., acted in behalf of SOUTHEASTERN HOME MORTGAGE COMPANY, in that SOUTHEASTERN HOME MORTGAGE COMPANY required HOME INSURANCE AGENCY OF FLORIDA, INC., to write insurance to cover their mortgage loans. That SOUTHEASTERN HOME MORTGAGE COMPANY held the original policies to protect themselves as far as the insurance remaining in force was concerned and of course was advised when any of the policies were cancelled.
***** *
“8. That the stock purchase agreement, which is a part of the record in this cause, contained certain provisions which were entered into by the parties to the agreement for the use and benefit of the Plaintiff and that the Plaintiff would not have allowed the sale of the agency unless provisions were put into the stock purchase agreement to protect the Plaintiff in the event of return commissions on return premiums referred to in the aforesaid stock purchase agreement. That the monies referred to in the stock puchase agreement are the return commissions due and owing the Plaintiff.
“9. That prior to the sale of HOME INSURANCE AGENCY OF FLORIDA, INC., Mr. Malcolm MacNeill representing the Plaintiff, Mr. Hoffman and Mr. Kaaber representing the Pur *474 chaser, and Mr. Jim Moore representing SOUTHEASTERN HOME MORTGAGE COMPANY, entered into negotiations for the sale of the agency. That MacNeill for the Plaintiff entered into the negotiations to protect Plaintiff’s interest in so far as the contingent liability for return commissions was concerned since the insurance written prior to the sale of HOME INSURANCE AGENCY OF FLORIDA, INC., was written with insurance companies serviced by the Plaintiff as general agents. Further, the Plaintiff did not want to rely completely upon the financial ability of the Purchaser of the agency to pay any return commissions or premiums. The Court further finds that during the negotiations, the return commissions on return premiums that might become due the Plaintiff were discussed and taken into consideration due to the fact that a new home owner’s type policy was being presented to the public for the first time at about the time of the sale. That the home owner’s policy would provide the insured better and additional coverage for practically the same premium that the policy holders were paying for their present policies, which policies were only fire and extended coverage policies. The fact that insurance agents would be trying to replace the fire and extended coverage policies with home owner’s policies on their renewal dates, was discussed during the negotiations by all parties concerned prior to the sale of the agency. In other words, discussions were held pertaining to an attempt by other agents to raid the business and cancel and replace the fire and extended coverage policies. It was further discussed in the negotiations by all parties concerned prior to the sale, that in the event, any of the fire and extended coverage policies were can-celled prior to their expiration dates, the return commissions would become due and owing the Plaintiff. It was agreed that since SOUTHEASTERN HOME MORTGAGE COMPANY through HOME INSURANCE AGENCY OF FLORIDA, INC., had written the business and had actually received the commissions from the premiums, that SOUTHEASTERN PIOME MORTGAGE COMPANY would indemnify PIOME INSURANCE AGENCY OF FLORIDA, INC., against any liability for the return commissions and pay the Plaintiff therefor as cancellations took place- or the policies were raided by other agents.
“10. The Court further finds that, the policies written by HOME INSURANCE AGENCY OF FLORIDA, INC., prior to the sale were five year fire and extended coverage policies, which were financed through a bank. That the bank, at the time of the sale of the policy by HOME INSURANCE AGENCY OF FLORIDA, INC., paid HOME INSURANCE AGENCY OF FLORIDA, INC., the entire premium for tire five years. That the mortgagor, SOUTHEASTERN HOME. MORTGAGE COMPANY, held the original policies since it held the first mortgages on the premises insured. Upon receipt of the premium from the bank for the five years, HOME INSURANCE AGENCY OF FLORIDA, INC., deducted their full commission from the five year premium and sent the balance to the Plaintiff. The Plaintiff deducted its commission and sent the balance of the premium to the insurance company who wrote the policy. That upon cancellation of the five year policies, the insureds stopped making their payments to the bank, and thereupon the bank would demand payment from the Plaintiff for the unexpired portion of the premium and commission pursuant to a contract the-Plaintiff had with the bank. The Court further finds that the Plaintiff did pay *475 the bank and made demand upon HOME INSURANCE AGENCY OF FLORIDA, INC., and SOUTHEASTERN HOME MORTGAGE COMPANY for the amount of the commissions they had taken from the premiums. That the return commissions or premiums discussed as aforesaid, are the monies in controversy in this law suit.
“11. The Court further finds from the evidence that SOUTHEASTERN PIOME MORTGAGE COMPANY and HOME INSURANCE AGENCY OF FLORIDA, INC., did promise, and .agree in the negotiations stage for the sale of the agency, to pay the commissions aforementioned. The Court further finds from the evidence that after the sale of the agency by SOUTHEASTERN HOME MORTGAGE COMPANY, SOUTHEASTERN HOME MORTGAGE COMPANY did promise to pay the commissions aforesaid and HOME INSURANCE AGENCY OF FLORIDA, INC., did promise to pay the commissions aforesaid. That, in fact, SOUTHEASTERN HOME MORTGAGE COMPANY and HOME INSURANCE AGENCY OF FLORIDA, INC., did pay parts of the commissions owed after the sale of the agency. That HOME MORTGAGE COMPANY ■OF FLORIDA, now known as SOUTHEASTERN HOME MORTGAGE COMPANY, made one payment to the Plaintiff on October 4, 1961, in the amount of EIGHT HUNDRED SIXTY-FIVE DOLLARS AND FORTY-THREE CENTS ($865.43), and another payment to the Plaintiff on October 12, 1961, in the amount of SIX HUNDRED EIGHTY-SIX DOLLARS AND EIGHTEEN CENTS ($686.18). That the two checks reflecting those payments are a part of the record in this cause, along with other documents showing the agreement between the parties. The Court further finds from the evidence that these payments were not made by mistake and were authorized by SOUTHEASTERN HOME MORTGAGE COMPANY. That HOME INSURANCE AGENCY OF FLORIDA, INC., after the sale did make certain payments on the indebtedness in connection with their accounts current with the Plaintiff. That the Court further finds that at the time the payments were made by the Defendants as aforesaid, the Plaintiff had the right under the agency agreement to cancel the agency contract; but did not so cancel. That thereafter as the commissions due became larger, the Defendants continued to delay and promised to pay and the Plaintiff continued to forebear. This suit was then brought to enforce payment from both Defendants.”
The appellant urges first that the plaintiff as a third party could not maintain an action on the indemnity provision in the contract between the seller of the insurance agency involved and the purchaser. An examination of this agreement, which is too lengthy to set out here, convinces us that the agreement was broad enough in its terms to include the plaintiff as a third party beneficiary even though the plaintiff was not identified by name. See American Surety Co. of New York v. Smith, 100 Fla. 1012, 130 So. 440 (1930); Restatement, Contracts § 139 (1932).
In its second and third points the appellant contends that the trial judge, in finding that the plaintiff was entitled to recover upon a theory of equitable estoppel, was in error. We do not find it necessary to discuss the application of equitable estoppel because it is apparent that the trial judge’s decision is fully supported by his findings on the indemnity provision of the contract discussed under the first point. We point out however that the matters recited by the trial judge in paragraph 11 of his findings relative to payments made by the defendant in recognition of its liability is further evidence that the indemnity contract was *476 intended for the benefit of the plaintiff because the parties so construed the contract by their own actions. Cf. Reinhardt v. Reinhardt, Fla.App.1961, 131 So.2d 509; Mileage Realty Co. v. Miami Parking Garage, Inc., Fla.App.1962, 146 So.2d 403.
Appellant’s fourth point challenges the sufficiency of the evidence to support the court’s finding that the defendant was liable to the plaintiff for return premiums as distinguished from return commissions. We do not think that this claimed distinction was fairly presented to the trial judge. The trial judge relied upon stipulation of counsel as to the amount of the recovery. In this connection he found:
“4. That by stipulation by and between counsel for the Plaintiff and counsel for HOME INSURANCE AGENCY OF FLORIDA, INC., HOME INSURANCE AGENCY OF FLORIDA, INC., stipulated to the amount in controversy or the amount owed if liability was found in the cause against it. The amount stipulated to was FIFTEEN THOUSAND FIVE HUNDRED THIRTEEN AND SIXTEEN CENTS ($15,513.16) DOLLARS.”
The stipulation referred to first took place at the pre-trial conference and appears in the record as follows:
“THE COURT: Let us dictate a stipulation in the record now. Who wants to dictate it?
“MR. POOLE: You can go ahead.
“MR. THOMSON: It is stipulated on behalf of the defendant Southeastern Home Mortgage Company that the total amount involved in this controversy is $16,375.20, subject to the proof of the plaintiff that this amount is represented by return commissions that became due by virtue of cancellation of policies written prior to October 1, 1960, by Home Insurance Agency of Florida, Inc.”
This stipulation was later augmented by a written stipulation which was admitted into evidence which listed “Total amount in controversy” as $15,513.16. It is true that the stipulation simply set the top limit of recovery against the defendant but we think that the stipulation furnished an adequate basis for the finding as to amount which was made by the trial judge.
Appellant’s fifth point attempts to raise-the Statute of Frauds as a defense to this-action. We find that this point was not presented to the court below nor is it supported by the record here.
Affirmed.