**S & J MOBILE HOME SALES, INC.,**
**Plaintiff,**

v.

**JAMES TALCOTT, INC., Defendant.**

**Civ. No. 68–22.**

United States District Court,
M. D. Florida,
Tampa Division.

Oct. 25, 1972.

Arnold D. Levine, of Levine & Freedman, L. Robert Frank, of Allen, Dell, Frank & Trinkle, Tampa, Fla., for plaintiff.

Peter J. Winders, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for defendant.

## MEMORANDUM OPINION

HODGES, District Judge.

This dispute arose over the interpretation of a financing agreement between the parties. Basically, their relationship involved Talcott's agreement to purchase S & J's retail installment contracts resulting from its retail sales of new and used mobile homes.

Upon the sale of a customer contract by S & J to Talcott, S & J would receive the unpaid principal balance represented by the paper, plus an additional amount equal to that portion of the unearned interest exceeding an add-on rate of 5½% per annum (as to new units) or 6% per annum (as to used units). This additional payment, measured by the interest yield of the contracts, was referred to in the financing agreement between the parties as "reduction of discount."

In the course of their continuing relationship the parties also created a reserve account and agreed that Talcott could deduct, and deposit in such account, a certain portion of S & J's "reduction of discount" at the time of the purchase of each contract. The purpose of the reserve was to provide a fund as security for S & J's obligation to return a portion of its "reduction of discount" in the event of an early satisfaction of the customer contract resulting in a diminution of the contract's interest yield. The precise wording of the agreement concerning this obligation of S & J was as follows:

"E. Pay Off:

"In the event of a pay-off resulting from a trade-in or otherwise, prior to the written term of the contract, any reduction of discount advanced to you will be returned to Talcott on a pro-rata basis."

The dispute that precipitated this litigation was a conflict between the parties as to whether the above provision of the agreement applied to early contract terminations caused by customer default and consequent repossession of the mobile home unit. This issue was tried by Chief Judge Lieb. He held that the agreement was applicable in such cases, and he ordered an accounting to determine the sums due from S & J to Talcott with respect to prior contracts terminated in that manner.

Talcott then moved for summary judgment supported by an affidavit reflecting its calculation of S & J's obligation. At that point, for the first time, S & J disputed Talcott's formula for determining the "pro-rata" re-allocation of the "reduction of discount" under the language of the agreement. The motion for summary judgment was denied and another trial was scheduled to resolve this issue.

**1334**

Talcott's formula, to which S & J objects, may be expressed as follows:

$$\frac{\text{Number of months remaining under contract}}{\text{Total months of contract}} \times \text{S \& J's "reduction of discount"}$$

A more logical and equitable formula under the agreement, according to S & J, would be the following method:

$$\frac{\text{S \& J's "reduction of discount"}}{\text{Total interest yield of the full-term contract}} \times \text{Unearned interest credit actually given to customer}$$

The differing results produced by these formulae are best illustrated by using one of the customer contracts as an example. The contract was terminated in the 73rd month of a 120 month term. The total anticipated interest yield was $2,162.42. S & J's original "reduction of discount" was $400.90.

*Talcott's approach*

| | |
|---|---|
| S & J's "reduction of discount" | $400.90 |
| Ratio of remaining term to full term (47/120) | X .391 |
| Charge to S & J | $156.75 |

*S & J's approach*

| | |
|---|---|
| Amount credited to customer | $331.30 |
| 400.90/2162.42 (Relationship of "reduction of discount" to total interest = 18.53%) | X .1853 |
| Charge to S & J | $ 61.40 |

---

In deciding this issue, of course, reference must first be made to the governing provision of the parties' agreement. Unfortunately, however, the contract does not specify any precise formula. It merely states that the "reduction of discount advanced to [S & J] will be returned to Talcott on a pro-rata basis."

The term "pro-rata" is normally interpreted to mean proportionately, or according to the share or interest of each person concerned; and, as such, it has no real meaning at all unless the share or interest of each in a given *res* is ascertainable by reference to some fixed measure or standard independently established by law or the governing documents involved. In this instance, insofar as the "reduction of discount" is concerned, neither the contract nor any rule of law clearly fixes the relative interest of the parties in the fund represented by that contractual phrase. If the customer contract is fully performed, the fund inures entirely to S & J; but if the contract is terminated before its expiration date, there is no provision in the agreement (apart from the term "pro-rata") to which reference can be made to determine the relative interest or share of each party. In the context of this case, therefore, the Court has concluded that the term "pro-rata" is incapable of precise construction or

application, and the issue must be resolved by employing the aid of extrinsic interpretive tools or axioms.

There is something to be said for each of the formulae urged by the respective parties. S & J forcefully argues that the division or allocation of the "reduction of discount" should be measured by reference to the unearned interest actually credited to the customer. That is the only fund "lost" to Talcott under the customer contract and, S & J concludes, it should be allocated according to the relative interest of each party in the total anticipated interest yield. This would certainly be one logical approach.

Talcott counters, however, by pointing out with some merit that even if the contract is imprecise, it at least speaks *against* the S & J contention by explicitly providing that some portion of the "reduction of discount" is to be returned, not the amount of unearned interest credited to the customer. In addition, Talcott argues that any approach predicated upon the total interest yield of the contract is not, in the context of this transaction, as logical or equitable as it might otherwise seem. "Interest" by definition is compensation for the use of money by the borrower and the risk of money by the lender. In the underlying transactions in this case, S & J had no money outstanding and incurred no risk. It received from Talcott the full principal amount of each contract (i.e., the full sale price of the mobile home unit), and the assignment of the contract was without recourse to Talcott (i.e., S & J had no risk of additional expense or loss of principal). Its only continuing interest in the contract was the "reduction of discount" which was, at that point, an additional potential profit from the mobile home sale as opposed to compensation for the use or risk of money. Thus, Talcott concludes, a formula based upon the length of the contract performance by the customer is the more logical "pro-rata" allocation of the "reduction of discount" between the parties.

In summary, the Court has concluded that the agreement between the parties is of doubtful meaning, and that neither of the formulae suggested by the litigants would constitute an unreasonable means of implementing their basic understanding that the "reduction of discount" would be redistributed in the event of early termination or pay-off of a customer contract.

In Orlando Orange Groves Co. v. Hale, 119 Fla. 159, 161 So. 284, 295 (1935), the Supreme Court of Florida said:

"This court is committed to the doctrine that where the terms of a written contract are in any respect uncertain or doubtful and the parties thereto have by their conduct placed a construction upon the contract which is reasonable, such construction will be adopted by the court upon the principle that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the principles of correct legal interpretation of the terms of the contract."

In this instance the evidence clearly establishes that Talcott uniformly employed its formula for calculating the "pro-rata" allocation of the reduction of discount over a substantial period of time, and notice of its charges to the reserve account was given to S & J each time the occasion arose to redistribute the reduction of discount under a given customer contract or contracts. To be sure, as S & J points out, these notices did not disclose the specific method or formula utilized by Talcott to calculate the charges being made. Nevertheless, had S & J made any effort to reconcile its accounts with respect to such charges it would have ascertained the formula used; or, at least, upon being unable to reconcile the accounts, it would have had a duty to inquire. By its silence and failure to object, therefore, S & J tacitly approved the method being followed by Talcott. Mileage Realty Co. v. Miami Parking Garage, Inc., 146 So.2d 403 (Fla.App.3d Dist. 1962), cert. denied, 153 So.2d 307 (Fla. 1963).