330 So.2d 192 (1976)
Irving B. LEVENSON and Robert Revitz, As Trustees, Appellants,
v.
BARNETT BANK OF MIAMI and Barnett Winston Investment Trust, Appellees.
Nos. 75-1342, 75-1431.
District Court of Appeal of Florida, Third District.
April 6, 1976.
*193 Sibley, Giblin, Levenson & Ward, Joseph Pardo, Miami, for appellants.
Mahoney, Hadlow, Chambers & Adams and John Aurell, Rosenberg, Rosenberg, Riesman & Glass, Miami, for appellees.
Before PEARSON, HENDRY and HAVERFIELD, JJ.
PEARSON, Judge.
These interlocutory appeals are from two successive orders in the same cause. They have been consolidated in this court. The first order entered during the course of trial treated objections of the defendant Barnett Winston Investment Trust to evidence presented as a motion to strike and thereupon stated that
* * * * * *
"... any testimony or evidence previously introduced, proffered or offered in this case relating or pertaining to the financial structure or condition of the Defendant Barnett Winston Investment Trust is hereby stricken from the record of this case, and the Court will not accept or consider any further testimony or evidence in connection with any such issue."
* * * * * *
The second order continued the trial of the cause and reserved ruling on plaintiffs' motion to amend their complaint pending final outcome of the first interlocutory appeal and further granted defendants' motion for the return to them of certain evidentiary matters produced pursuant to a court order. The main thrust of the appeals is that the court erred in refusing to allow the introduction of evidence of the financial ability of the defendants to perform under a commitment to lend the plaintiff $6,000,000.
The following background facts appear without controversy in the record: The plaintiffs entered into a written contract with the Barnett Winston Investment Trust for a $6,000,000 loan to be disbursed two and one-half years after the commitment. The plaintiffs paid a $30,000 initial commitment fee. In addition, the plaintiffs paid, by an irrevocable letter of credit, a $60,000 fee which is variously labeled by the plaintiffs as a standby fee and by the defendants as a portion of the commitment fee. It was agreed between the parties that the $60,000 fee was to be returned if the loan went through and retained by Investment Trust if it did not go through. The loan did not go through because of plaintiffs' default in failing to complete the building which was to be the subject of the permanent mortgage.
Plaintiffs brought an action entitled "Complaint for Injunction" by which they sought and obtained an injunction against the delivery of the $60,000 additional fee to the Investment Trust. The injunction prohibited the payment of the irrevocable letter of credit pending suit. At trial, the plaintiffs tendered and obtained the introduction of evidence under a continuing reservation of objections by the defendant. This evidence had two aspects. First, there was evidence that the Investment Trust had not earmarked funds or sources of funds for use in the event the plaintiffs met the conditions of the commitment and were entitled to receive the $6,000,000 loan. Second, there was evidence that the Investment Trust, during the period between the making of the commitment and its expiration, would have been unable to deliver the $6,000,000 loan if the conditions for the *194 loan had been met as provided for in the commitment letter.[1]
After hearing testimony as set out above, the court reached the conclusion that the failure vel non to earmark and the inability vel non to make the loan were irrelevant to the issue of the entitlement of the Investment Trust to the $60,000 additional fee. Upon this conclusion, the interlocutory order first appealed was entered.
The plaintiffs, as appellants, urge that under the law set forth by this court in Financial Fed. Sav. & L. Ass'n v. Burleigh House, Inc., Fla.App. 1974, 305 So.2d 59, it was incumbent upon the Investment Trust, in order to earn the fees, to earmark funds for the payment of the loan in the event the plaintiffs complied with the conditions of the commitment. The following section of that opinion is relied upon as authority for this position:
* * * * * *
"Hereunder, we first considered the trial judge's treatment of the $78,000 commitment fee as interest. A commitment fee is not a charge for the use of money but rather a purchase of the right to secure a loan of money by a prospective borrower. In other words, it is a consideration for the lender's setting aside or earmarking funds which are committed to be loaned in the future. Thus, we hold that the trial judge erred in categorizing as interest the one point ($78,000) commitment fee which the record in the case sub judice amply supports as being reasonable in that a one point commitment fee is customary and the acceptable practice in the trade."
* * * * * *
This court's opinion in Burleigh House held that a commitment fee was improperly included by the trial court as a part of the interest paid upon a loan in a case where the borrower was claiming usury. The statement in that opinion of justification for a commitment fee was not intended to lay down a principle of law holding that in each case where a commitment agreement is made funds or sources of funds must be earmarked for the completion of that particular loan. Accordingly, we reject such an interpretation of that opinion, if it could reasonably be so interpreted.
We find no rule of law which requires the earmarking of particular funds or particular sources of funds for the completion of a loan agreed to under a commitment to loan. Therefore, we conclude that so much of plaintiff's evidence which sought the establishment of the fact that funds were not so earmarked was properly stricken by the trial court because this did not present a reason for plaintiffs' failure to pay the fees.
Turning now to the second aspect of the evidence which was stricken by the trial court in the first appealed order, the record reveals the evidence to be relevant to plaintiffs' contention that the commitment letter and the agreement to pay the additional fee was, in fact, a void agreement because no consideration existed for the payment of the additional fee. It is well established that a party may not recover on a contract which he himself has rendered incapable of performance by his own inability to perform the promise given. Cf. Stokes v. Baars, 18 Fla. 656 (1882). "Before one can declare a forfeiture of sums due under a contract, he himself must first have complied with all terms under the contract." Midstate Hauling Co. v. Watson, Fla.App. 1965, 172 So.2d 262, 266. For the Investment Trust to "compl[y] with all terms under the contract," it must show more than the mere indicia of its ability to perform; that is to say, the Investment Trust cannot simply *195 assert that because it holds itself out in the everyday business world as a lender of money it, therefore, is capable of fulfilling that lending function in a particular instance.
The basic premise of appellee's argument on this point is that the $30,000 initial commitment fee and the irrevocable letter of credit for $60,000 are a unit and are together the commitment fee paid as consideration for the Investment Trust's promise to make the loan if and when the plaintiff-borrowers comply with the terms of the promise to loan. If this is true, then the $30,000 initial commitment fee and the $60,000 irrevocable letter of credit will be judged by the same standards in determining whether defendant's evidence presented a legal cause for the exercise of the court's equitable powers to prevent the final payment under the letter of credit. The defendant relies upon the holding in Goldman v. Conn. General Life Ins. Co., 251 Md. 575, 248 A.2d 154 (1968), and cases cited therein, for an affirmance of the trial court's conclusion that evidence of the Trust's ability to perform was irrelevant. In the cited case, the court was concerned with a $17,000 fee exacted by Connecticut General as compensation for a commitment to make a loan. The court recognized that many cases hold that a lender has a right to retain a commitment fee when the borrower fails to avail himself of the lender's undertaking. But the decision of the Maryland court concerned a different ground in that it held that under the facts of the case the payment by the borrower to Connecticut was a consideration for Connecticut's commitment letter. In other words, the payment was consideration for a promise. We are impressed with the reasoning of the Maryland court and think that it is governing with regard to the initial payment of the $30,000 commitment fee.
Are we justified then in applying any other reasoning to the second ($60,000) fee which the Trust described as having the same consideration? One distinguishing factor between the initial fee and the irrevocable letter of credit is that the agreement between the parties provided that "the $60,000 commitment-standby fee will be returned to you [borrowers] without interest upon due compliance by you of all the covenants and conditions herein and upon disbursement of the loan." We are aware that some commitment fees are returned to the borrower at the time the loan is consummated. See Boston Road Shopping Center, Inc. v. Teachers Ins. & Annuity Ass'n of America, 13 A.D.2d 106, 213 N.Y.S.2d 522 (1961), affirmed 11 N.Y.2d 831, 227 N.Y.S.2d 444, 182 N.E.2d 116 (1962). Nevertheless, we think there is some significance to the fact that in the present instance the fee to be charged is broken into two parts. It is reasonable, and supported by the facts in this case, that the $30,000 initial fee was the amount that the Investment Trust found necessary to charge in order to protect itself from the expenses and the time consumed by its employees in determining that the loan to the borrower was proper under its rules and regulations and good business practice. If this is true, then the purpose for the $60,000 refundable, "standby fee" was that it served as compensation for the Investment Trust's holding itself in readiness to make the loan or as a liquidated damages provision in event the borrower failed to proceed with the business transaction.
The Supreme Court of Florida has held in Hutchison v. Tompkins, Fla. 1972, 259 So.2d 129, that where the court is presented with a situation where damages are not readily ascertainable at the time the contract is drawn, a provision for forfeiture of a deposit will be considered as liquidated damages, reserving to the court, in the exercise of its equitable powers, the power to grant relief from that provision insofar as it is inequitable at such time as actual damages are ascertained.
We hold that there is a basis for distinction between the two payments and that they need not be considered as one unified *196 provision for a simple commitment fee. This position is reinforced by the fact that the Trust has itself labeled the second fee as a "standby fee." The ordinary meaning of the word standby involves the holding of oneself in readiness. Therefore, the trial court will be entitled to determine whether or not the Investment Trust did, in fact, hold itself in readiness. Accordingly, we conclude that the order striking so much of plaintiff's evidence that sought to establish the fact that the defendant was unable to carry through with its promise to make the $6,000,000 loan was error.
The second interlocutory appeal urges error upon the trial court's order entered after the first interlocutory appeal. This order has several aspects which will be briefly discussed. Initially, the plaintiffs argue that the trial court was without jurisdiction to enter the second appealed order because of the pendency of the first appeal. We find no merit in this position because the trial court has jurisdiction to proceed with the trial of the cause even though an interlocutory appeal has been taken on some other aspect of the case. See Sunrise Beach, Inc. v. Phillips, Fla. App. 1965, 181 So.2d 169. We find no provision in the second order which constitutes a judgment upon any of the matters raised in the interlocutory appeal.
The second point presented in the second interlocutory appeal claims error upon the trial court's order directing the return of copies of certain documents obtained through discovery. It is claimed that the copies of these documents constituted work product of the attorneys and, therefore, could not be ordered returned. We find no merit in this position inasmuch as the conduct of discovery is a matter within the broad discretion of the trial court and will be reviewed in the appellate court only when a showing is made that the discovery order departs from the essential requirements of law. See Meiklejohn v. American Distributors, Inc., Fla.App. 1968, 210 So.2d 259. In the instant case, it is apparent that the court was concerned with the necessity to protect the defendant from what may prove to be unfounded claims. The balancing of a right of a party to discovery as against the unnecessary embarrassment to the party moved against is a matter properly considered by the trial court in its orders on discovery procedure. No error has been demonstrated under this point.
The third attack upon the second interlocutory order claims error upon the trial court's denial of plaintiffs' motion for leave to amend their complaint specifically to raise the issue of defendants' financial capacity to make the $6,000,000 loan. The trial court having reserved ruling on the motion, as has previously been discussed, plaintiff is entitled to raise the issue of the impossibility of performance of the defendant's promise to loan the $6,000,000. Therefore, the court was in error when it failed to allow the amendment of the complaint in this particular. In addition, plaintiffs urge that they should have been allowed to amend their complaint to assert a claim for the return of the original commitment fee of $30,000 upon the same ground. The claimed right to the return of the $30,000 commitment fee has previously been considered and, in accordance with that holding, we now hold that the court did not commit error when it failed to allow the amendment of the complaint in this particular.
The fourth matter argued by the appellant on the second interlocutory appeal claims error upon the trial court's order changing the amount of the injunction bond. We have previously considered the amount of the injunction bond upon a motion to review supersedeas in this case and we find no error in the court's order.
Accordingly, the first interlocutory order appealed which struck plaintiffs' evidence *197 on the issue of the defendants' ability to comply with its promise to lend $6,000,000 is reversed. The court's order which struck evidence upon the issue of defendants' failure to earmark funds or specific sources of funds for the $6,000,000 loan is affirmed. The issues raised in the second interlocutory appeal are found to be without merit and the orders appealed are affirmed except for the order which denied plaintiffs leave to amend their complaint to allege defendants' inability to make the $6,000,000 loan as a basis for their claim that the $60,000 letter of credit should not be enforced. The denial of the leave to amend with regard to the $30,000 commitment fee is affirmed.
Affirmed in part and reversed in part.
NOTES
[1] This evidence was supported only by a general allegation in the complaint that the Investment Trust had failed to abide by its agreement. A later motion to amend the complaint was denied.